UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PATRICIA GAVIN,

    *Plaintiff*,

v.

DEPARTMENT OF THE AIR FORCE *et al.*,

    *Defendants*.

Civil Action No. 17-768 (TJK)

**MEMORANDUM OPINION AND ORDER**

In 2017, Plaintiff Patricia Gavin, proceeding *pro se*, filed this lawsuit to seek various forms of relief related to her student loans. This Opinion concerns four issues: (1) whether the doctrine of state sovereign immunity bars Gavin's claims against the Illinois Student Assistance Commission ("ISAC"); (2) Gavin's motion to amend her complaint (ECF No. 62); (3) Gavin's motion to "stay" a change in her disability status that was apparently made by the Social Security Administration ("SSA") (ECF No. 55); and (4) Gavin's motion for summary judgment (ECF No. 54). For the reasons explained below, Gavin's claims against ISAC will be dismissed, and all three motions will be denied. In addition, the Court will order Nelnet, Inc. to file its motion for judgment on the pleadings by June 14, 2018.

**I.**     **Factual Background**

It is difficult to discern a coherent narrative from Gavin's various filings in this case.[1] Nonetheless, taking as true Gavin's allegations for purposes of this Opinion, she appears to

---

[1] In evaluating the instant motions and attempting to understand Gavin's allegations, the Court has relied on all of Gavin's filings, and in particular the following: ECF No. 1 ("Compl."); ECF No. 28 ("Mot. for Inj."); ECF No. 43 ("Change of Address"); ECF No. 45 ("Reinstatement Mot."); ECF No. 54 ("SJ Mot."); ECF No. 55 ("Stay Mot."); ECF No. 61 ("Pl.'s ISAC Br."); ECF No. 62 ("Mot. to Amend"); ECF No. 62-1 ("Proposed Am. Compl.").

describe a series of unfortunate circumstances that led her to take on student loans she has been unable to repay. She appears to have made some of the same allegations in previous litigation. *See Gavin v. Prudential Office of Servicemen's Grp. Life Ins. Co.*, 72 F. Supp. 3d 332 (D.D.C. 2014), *aff'd*, No. 15-7007, 2016 WL 4098810 (D.C. Cir. July 18, 2016).

Gavin served in the Air Force from 1985 to 1992, and then in the Air Force Reserve from 1995 to 1998. Reinstatement Mot. ¶ 9. Her ex-husband also served in the Air Force until his retirement in 1999. *See* Proposed Am. Compl., Ex. B. They divorced in 2003. *See* SJ Mot. ¶ 1. According to Gavin, after the divorce, members of her ex-husband's family hid marital assets from her and ginned up false charges of assault against her to separate her from her children. *See* Compl. ¶¶ 17-18, 23-25, 31-32. These false charges also allegedly prevented Gavin from being employed. *See id.* ¶ 25. Finding herself without a job, Gavin pursued an MBA program offered by Defendant Keller Graduate School of Management ("Keller"), causing her to take on student loans. *Id.* ¶ 35; Reinstatement Mot. ¶¶ 62-63. She claims that Keller's "false advertising" and "deceptive trade practices" induced her to take on these loans. Proposed Am. Comp. at 2.

Gavin also alleges that, starting in 2006, she became the victim of a fraud perpetrated by her divorce attorney, who worked for the law firm Godwin Gruber. Compl. ¶¶ 8-9, 19. The lawyer allegedly abused a power of attorney to obtain social security benefits in Gavin's name that were never passed on to her. *See id.* ¶ 26; Pl.'s ISAC Br. ¶ 22, 48. The attorney also allegedly engaged in other misconduct while representing Gavin in lawsuits in Texas and Louisiana. *See* Compl. ¶¶ 19-22; Pl.'s ISAC Br. ¶¶ 20-22; Reinstatement Mot. ¶¶ 37, 39, 73. This misconduct allegedly deprived her of income, requiring her to take on additional student loans. *See* Mot. for Inj. ¶ 8.

Gavin's ex-husband came out of retirement in 2009. *See* Pl.'s ISAC Br. ¶ 6. As a result, Gavin no longer received a share of his retirement benefits, causing her to fall behind on her loan payments. *See id.*; Change of Address ¶ 10; Reinstatement Mot. ¶ 57; SJ Mot. ¶ 1; Stay Mot. ¶ 4. Around the same time, someone allegedly forged Gavin's signature on a form waiving her right to her survivor benefits in the event of her husband's death. Mot. for Inj. ¶ 12. Gavin attributes this forgery to family members, *see id.* ¶ 15, and also asserts that the federal government was responsible for it, *see id.* ¶ 16, apparently on the theory that the military was negligent in failing to spot the forgery, *see* Change of Address ¶¶ 4-5. Gavin claims that the forgery enabled her husband's return to the Air Force and thereby caused her to lose her share of his retirement benefits, although it is unclear how. *See id.* ¶ 3; Pl.'s ISAC Br. ¶ 26.

In 2012, Gavin's ex-husband and his second wife were found dead in their home in Louisiana. *See* Compl. ¶¶ 4-5; Pl.'s ISAC Br. ¶ 10. In Gavin's telling, the deaths brought to light the forgery of Gavin's purported waiver of her survivor benefits, and the Air Force corrected the forgery by restoring those benefits to Gavin. Compl. ¶ 7. Gavin subsequently engaged in litigation with Defendant Prudential Office of Servicemen's Group Life Insurance Company ("Prudential"), seeking proceeds from her ex-husband's life insurance. *See id.* ¶ 15. Gavin claims that her prior lawsuit was dismissed due to an unspecified "fraud upon the courts and Plaintiff." *Id.*

Gavin incurred additional tuition obligations when she enrolled in a master of legal studies program at the University of Oklahoma. *Id.* ¶ 2. Gavin claims that, because several of the Defendants improperly kept her prior student loans in default status, she ultimately had to withdraw from the program. *See* Reinstatement Mot. ¶¶ 28-29, 31; Proposed Am. Compl. at 5.

## II. Procedural Background

Gavin filed her complaint in April 2017 against the following Defendants: the Department of Education, Department of the Air Force, and Department of the Interior (the "Federal Agency Defendants"); Donald Godwin and Michael Gruber (the "Attorney Defendants"); ISAC;[2] American Education Services, Inc. ("AES"); Navient Solutions, LLC and Sallie Mae Bank (the "Sallie Mae Defendants");[3] Nelnet, Inc. ("Nelnet"); Prudential; and Keller.[4] Compl. at 1-3. She did not clearly assert any particular cause of action, but did request relief under the Tucker Act. *See id.* at 3. The relief that Plaintiff seeks appears primarily to relate to her student loans, and includes a discharge of her loans and an order ending the garnishment of her income by ISAC. *See id.* ¶ 1.

Except for Nelnet (which answered Gavin's complaint) and ISAC (which has not appeared), the Defendants filed motions to dismiss over the next few months. The Defendants argued as follows:

- The Federal Agency Defendants moved to dismiss for lack of subject matter jurisdiction, and also for failure to state a claim on the ground that Gavin failed to describe any misconduct by the government or to assert any recognized cause of action. *See* ECF No. 39-1 at 4-7.

- The Attorney Defendants, who had been name partners at Godwin Gruber (the since-disbanded law firm that employed Gavin's divorce attorney), argued that the Court lacks subject matter jurisdiction over Gavin's claims against them; that the Court lacked personal jurisdiction over them, because they are not residents of the District of Columbia and because all of Gavin's claims against them arose from conduct in Texas and Louisiana; that Gavin failed to state a claim against them; and that she

---

[2] While Gavin has sued this entity as the "Illinois Student Loan Assistance Commission," the word "Loan" is not part of its official name. *See* 110 Ill. Comp. Stat. 947/15.
[3] Gavin appears to have mistakenly sued these entities as "Navient, Inc." and "Sallie Mae." *See* ECF No. 7 at 1 & n.1.
[4] It appears that Keller is not, in fact, a corporate entity capable of being sued in its own name, but rather a business unit of DeVry University, Inc. ECF No. 26.

- failed to plead her fraud allegations with particularity. *See* ECF No. 10 at 3-12; ECF No. 20 at 3-12.

- The Sallie Mae Defendants moved to dismiss on the ground that Gavin's complaint described no conduct they had committed and thus failed to state a claim against them. *See* ECF No. 7 at 4-5.

- AES moved to dismiss on the ground that Gavin had failed to state a claim for relief against it, because it is merely a loan servicer and does not itself hold any debt against Gavin; AES also argued Gavin had failed to exhaust her administrative remedies under federal education law for any claim that she is entitled to a discharge of her student loans. *See* ECF No. 14-1 at 6-8.

- Prudential argued that Gavin had failed to state a claim against it; that it had not been properly served; and that *res judicata* barred Gavin's claims, which she had previously litigated in this District. *See* ECF No. 17-1 at 2, 4-7 (citing *Gavin*, 72 F. Supp. 3d 332).

- Keller argued that Gavin failed to state a claim against it because she alleged no misconduct by Keller, merely that she had gotten her MBA there. *See* ECF No. 27-1 at 2-4. Keller also alleged that Gavin had failed to exhaust her administrative remedies; had failed to plead her fraud allegations with particularity; and had failed to identify a proper basis for invoking the Court's jurisdiction. *See id.* at 4-10.

As summarized in a prior Order, Gavin failed to make any substantive response to these motions to dismiss, even though the Court repeatedly warned Gavin to do so and provided her, *sua sponte*, with a lengthy extension of her time to respond. *See* ECF No. 44. The Court therefore granted the motions to dismiss as conceded, and dismissed Gavin's claims against the Defendants that had moved to dismiss (that is, all Defendants except ISAC and Nelnet). *See id.*

In response, Gavin filed a motion for "reinstatement of all claims." *See* Reinstatement Mot. Gavin offered two explanations for her failure to respond to the motions to dismiss. First, during the course of the litigation, she had moved to Costa Rica to teach yoga classes and only recently returned. *Id.* ¶ 1; *see also* Change of Address ¶ 12. Second, Gavin referenced a medical condition. *See* Reinstatement Mot. ¶ 1. However, Gavin did not explain how the condition, which appears to be longstanding, had prevented her from responding to the motions. *See id.*

5

¶¶ 1-3. Nor did Gavin provide any substantive response to the motions to dismiss the Court had granted as conceded. The Court therefore denied the motion for "reinstatement" by minute order on February 12, 2018.

On March 6, 2018, the Court held a scheduling conference with Gavin and Nelnet. The Court noted that ISAC had not appeared, that it was not clear whether ISAC had been properly served, and that ISAC appears to be a state government body immune from suit in federal court under the Eleventh Amendment to the U.S. Constitution. The Court advised Gavin that, if she believes this Court has jurisdiction over her claims against ISAC, she should submit a supplemental brief setting forth her arguments in favor of jurisdiction. The Court subsequently issued a Scheduling Order with a deadline for this submission. *See* ECF No. 53 ¶ 1.

The Scheduling Order also laid out a procedure for Gavin to amend her complaint. The Order explained that, if Gavin wished to amend her complaint, she would have to file a copy of her proposed amended complaint and a brief explaining how she met the standard for leave to amend under Federal Rule of Civil Procedure 15(a). *See* ECF No. 53 ¶ 2. In particular, if Gavin intended her amended complaint to resurrect her claims against the dismissed Defendants, she would have to explain (i) why her previous failure to timely oppose the motions to dismiss did not constitute undue delay, and (ii) why her proposed amendments would not be futile. *See id.* ¶ 2(B).

Gavin subsequently filed a brief regarding ISAC, as well as a motion for leave to amend. *See* Pl.'s ISAC Br.; Mot. to Amend.[5] She has also filed two other motions. The first seeks to

---

[5] While the latter filing is styled as a "proposed amended complaint," it in fact appears to present reasons why her proposed amended complaint (attached as Exhibit A to the filing) should be accepted. *See* Mot. to Amend. Therefore, the Court treats it as a motion for leave to amend.

"stay" a change to her student loan discharge date and social security disability benefits. *See* Stay Mot. The second purports to be a motion for summary judgment. *See* SJ Mot.

**III.　Analysis**

For the reasons explained below, Gavin's claims against ISAC will be dismissed, and her outstanding motions will be denied.

**A.　Whether State Sovereign Immunity Bars Gavin's Claims against ISAC**

ISAC is an agency of the State of Illinois. *See* 110 Ill. Comp. Stat. 947/15; *Sorrell v. ISAC*, 314 F. Supp. 2d 813, 816-17 (C.D. Ill. 2004). Under the doctrine of state sovereign immunity, "suits against the States and their agencies" in federal court "are barred regardless of the relief sought." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). This doctrine admits of few exceptions, namely where the state has consented to suit in federal court or where Congress has validly abrogated state sovereign immunity. *See Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999). If Congress wishes to abrogate state sovereign immunity, it must do so unequivocally based on a valid grant of constitutional authority. *See Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001). Similarly, while Congress can sometimes require a state to waive sovereign immunity as a condition tied to grants of federal funds, Congress must express that condition clearly. *See Barbour v. WMATA*, 374 F.3d 1161, 1163 (D.C. Cir. 2004).

Gavin's only argument for jurisdiction is that Illinois, by participating in federal student loan programs, has waived its sovereign immunity with respect to suits against ISAC. *See* Pl.'s ISAC Br. ¶ 68. In particular, she argues that ISAC is merely a "collection agent for the federal government," *id.* ¶ 75, and thus is not immune from suit, because any financial effect from this lawsuit would ultimately flow to the U.S. Treasury, *see id.* ¶¶ 60-62, 68. Put simply, that is not a cognizable basis to find a waiver of Illinois's sovereign immunity. Gavin cites no statute

7

conditioning Illinois's receipt of federal funds on a waiver of sovereign immunity in cases like this one. The only authority she does cite is 34 C.F.R. § 682.410, a regulation promulgated by the Department of Education pursuant to the Higher Education Act of 1965 ("HEA"), 20 U.S.C. § 1001 *et seq.* *See* Pl.'s ISAC Br. at 1. But the HEA does not even provide a private right of action, *Kemper v. U.S. Dep't of Educ.*, 285 F. Supp. 3d 145, 149 (D.D.C. 2018), much less an unequivocal waiver of Illinois's right to be immune from suit in federal court. *Cf. Robinett v. Delgado Cmty. Coll.*, No. 99-cv-2545, 2000 WL 798407, at *5 (E.D. La. June 19, 2000) (concluding the HEA does not abrogate state sovereign immunity). Indeed, a judge in the Central District of Illinois dismissed a suit against ISAC under other federal student-loan laws, concluding that Illinois has not waived its sovereign immunity from such suits. *See Sorrell*, 314 F. Supp. 2d at 816-17; *see also Ha v. U.S. Dep't of Educ.*, 680 F. Supp. 2d 45, 47 (D.D.C. 2010) (citing *Sorrell*). Similarly, in this case, the Court concludes that Gavin's claims against ISAC are barred by state sovereign immunity.

Therefore, this Court lacks jurisdiction over the claims against ISAC, which will be dismissed from this action.

### B. Motion for Leave to Amend

Under Rule 15(a)(2), the court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "[A]n added measure of leniency is extended to *pro se* litigants with regard to procedural requirements." *Plummer v. Safeway, Inc.*, 934 F. Supp. 2d 191, 197 (D.D.C. 2013). "When evaluating whether to grant leave to amend, however, the Court must consider these factors: (1) undue delay; (2) prejudice to the opposing party; (3) futility of the amendment; (4) bad faith; and (5) whether the plaintiff has previously amended the complaint." *Habliston v. FINRA Dispute Resolution, Inc.*, 251 F. Supp. 3d 240, 244 (D.D.C. 2017). Whether to grant leave to amend "is committed to a district court's discretion" based on

these factors. *Bode & Grenier, LLP v. Knight*, 808 F.3d 852, 860 (D.C. Cir. 2015) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996)).

While Gavin has not previously amended her complaint, accepting her proposed amended complaint would be futile. "The Court must identify how the amended complaint differs from the original before determining whether it should grant leave to amend." *N. Am. Catholic Educ. Programming Found., Inc. v. Womble, Carlyle, Sandridge & Rice, PLLC*, 887 F. Supp. 2d 78, 85-86 (D.D.C. 2012). "An amended complaint is futile if it merely restates the same facts as the original complaint in different terms, reasserts a claim on which the court previously ruled, fails to state a legal theory or could not withstand a motion to dismiss." *Greggs v. Autism Speaks, Inc.*, 987 F. Supp. 2d 51, 54 (D.D.C. 2014) (citing *Robinson v. Detroit News, Inc.*, 211 F. Supp. 2d 101, 114 (D.D.C. 2002)). Futility alone is a sufficient basis to deny leave to amend. *See id.*

The proposed amended complaint largely rehashes facts that Gavin has presented in previous filings. *See* Proposed Am. Compl. To the extent that Gavin merely "restates the same facts as the original complaint in different terms," *Greggs*, 987 F. Supp. 2d at 54, leave to amend should be denied because the new complaint is not, in fact, an "amendment" at all and would add no value to the proceedings.

Moreover, by repeating these allegations, Gavin effectively seeks "reinstatement of her claims" against the previously dismissed Defendants. Mot. to Amend ¶ 73. "[T]here is no doubt that the district court has the discretion to deny a plaintiff leave to amend his or her complaint to add claims already dismissed." *Haynes v. Navy Fed. Credit Union*, 282 F.R.D. 17, 20 (D.D.C. 2012). That is particularly true where the plaintiff "had a full and fair opportunity to respond to the merits of [the defendant's] arguments" but "did not do so." *Id.* Here, the Court granted these Defendants' motions to dismiss, the first of which was filed almost a year ago, as conceded

because Gavin never responded to them. ECF No. 44. Despite repeated urging from the Court—including, most recently, in connection with the instant motion to amend, *see* ECF No. 53 ¶ 2(B)—Gavin still has not responded to the arguments in the motions to dismiss. Because Gavin has not even addressed the arguments in those motions, allowing her to reinstate her claims by raising the same allegations would be futile.

Finally, the handful of new claims that Gavin has made also do not justify granting leave to amend, because they would not survive a motion to dismiss. First, Gavin alleges that ISAC and "Educational Financial Services" violated 34 C.F.R. § 682.410(b)(5)(vii) by failing to provide her information about an ombudsman before garnishing her income. *See* Proposed Am. Compl. at 2-3. But the Court lacks jurisdiction over Gavin's claims against ISAC, as explained above, and "Educational Financial Services" is not a party.

Second, Gavin asserts claims "based upon Whistleblower Protection [Act of 1989] and Military Pay Act," seeking over $1,500,000 in back wages supposedly owed by the military. *See* Proposed Am. Compl. at 3, 6. Gavin does not set forth facts giving rise to any recognizable claim under the Whistleblower Protection Act. Nor does she allege that she exhausted her administrative remedies, as such a claim requires. *Webster v. U.S. Dep't of Energy*, 267 F. Supp. 3d 246, 268 (D.D.C. 2017) ("Plaintiffs bringing [Whistleblower Protection Act] claims must exhaust their administrative remedies."); *see also Wilson v. James*, 139 F. Supp. 3d 410, 433 (D.D.C. 2015) (explaining that judicial review of a claim under the Military Whistleblower Protection Act requires exhaustion of administrative remedies), *aff'd*, No. 15-5338, 2016 WL 3043746 (D.C. Cir. May 17, 2016). Moreover, the Court lacks subject matter jurisdiction over her back-pay claim. A claim for back pay under the Military Pay Act is within the purview of the Court of Federal Claims, *see Metz v. United States*, 466 F.3d 991, 998 (Fed. Cir. 2006), and

because the amount sought is over $10,000, that court's jurisdiction is exclusive, *see Schwalier v. Hagel*, 734 F.3d 1218, 1220 (D.C. Cir. 2013).

Finally, Gavin alleges for the first time that Keller engaged in "deceptive trade practices and false advertising with promises of employment and increased income upon graduation." Proposed Am. Compl. at 2. Given that Gavin provides no further information about the nature or circumstances of these alleged false promises, her complaint clearly lacks the "factual content" required to state a false advertising claim with "facial plausibility." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[6]

The Court finds that other factors also weigh against granting leave to amend. While Gavin has not previously amended her complaint, accepting her proposed amended complaint would unfairly prejudice the other parties to this action for reasons already discussed: Gavin still has not responded to the substantive arguments made in Defendants' motions to dismiss, nor does Gavin's proposed amended complaint appear designed to address those arguments. In light of Gavin's persistent delay in responding to the other parties' arguments in favor of dismissal, Defendants should not be forced to file another round of motions to dismiss in the hope that Gavin might respond this time.

Therefore, Gavin's motion for leave to amend will be denied.

---

[6] Gavin does cite a judicial opinion in an action brought by the FTC against the company that operates Keller. Proposed Am. Compl. at 1 n.1 (citing *FTC v. DeVry Educ. Grp., Inc.*, No. 2:16-cv-579, 2016 WL 6821112 (C.D. Cal. May 9, 2016)). But Gavin does not explain which of the allegations in that case are relevant to her claims, or how. Indeed, the earliest misstatements alleged in the FTC's complaint occurred in 2008. *See* Complaint ¶¶ 20-43, *FTC v. DeVry Educ. Grp. Inc.*, No. 2:16-cv-579, ECF No. 1 (C.D. Cal. Jan. 27, 2016). Gavin began her studies at Keller in 2004, *see* Compl. ¶ 35, so there is no direct line between the allegations in the FTC case and her theory that Keller's misstatements induced her to take on the student loans at issue in this action. Thus, even construing Gavin's complaint liberally in her favor, this bare cross-reference to the FTC action is not enough to state a claim.

### C. Motion to Stay

Gavin has filed a motion styled as a "Request for Stay of TPD Discharge Date & SSDI Eligibility." Stay Mot. at 1. As best the Court can tell, this motion was prompted by two events. First, on February 8, 2018, the SSA sent Gavin a letter informing her of an "informal decision" that she was not eligible for Supplemental Security Income, although she could file a claim if she sought a formal decision. Stay Mot. Ex. C. Second, on February 19, 2018, Gavin received a letter from Nelnet informing her that, based on information provided by SSA, she may qualify for "Total and Permanent Disability Discharge" of her loans as of April 5, 2016. Stay Mot. Ex. D. Gavin appears to argue that the discharge date should be earlier, in April 2011. *See* Stay Mot. at 1.

This motion appears to seek relief from Nelnet, namely a partial discharge of Gavin's student loans. It thus amounts to a request for preliminary relief, but Gavin has not even attempted to satisfy the standard for such relief. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (setting forth standard for preliminary injunction). Therefore, the motion must be denied to the extent it seeks relief from Nelnet.

The motion also appears to seek relief from the SSA, namely a change in her disability status. To that extent, the motion must also be denied. The SSA is not a party to this action. And even if Gavin sought to join the SSA, claims against it would have to be dismissed at this juncture. District courts have jurisdiction in social security benefits cases only after the plaintiff has presented a claim for benefits and received a "final decision" from the Commissioner of Social Security. *See* 42 U.S.C. § 405(g)-(h); *Heckler v. Ringer*, 466 U.S. 602, 617 (1984); *Weinberger v. Salfi*, 422 U.S. 749, 765-67 (1975); *Action All. of Senior Citizens v. Leavitt*, 483 F.3d 852, 856-57 (D.C. Cir. 2007); *Ryan v. Bentsen*, 12 F.3d 245, 247 (D.C. Cir. 1993). This requires fully exhausting the administrative review process set forth in SSA regulations. *See* 20

C.F.R. § 404.900; *Ryan*, 12 F.3d at 247. Gavin provides nothing to suggest that she has submitted a claim to the SSA, much less exhausted the SSA's review process. The record shows only that Gavin received an "informal decision" that invites her to file a claim if she wishes. Stay Mot. Ex. C. Therefore, the Court lacks jurisdiction to grant any relief against the SSA in this case, and Gavin's stay motion will be denied.

### D. Motion for Summary Judgment

Finally, Gavin has also filed a motion styled as a "Motion for Summary Judgment." SJ Mot. at 1. This motion requests various forms of relief similar to those requested in the complaint and other filings in this case. *See id.* ¶¶ 7-28. These requests are conclusory and unsupported by evidence or argument, and thus the motion fails to comply with Federal Rule of Civil Procedure 56(c). In any event, "summary judgment is premature unless all parties have 'had a full opportunity to conduct discovery.'" *Convertino v. DOJ*, 684 F.3d 93, 99 (D.C. Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)). Given that discovery has not yet closed, this motion will be denied without prejudice to either party's ability to file summary judgment motions at the appropriate time.

## IV. Further Proceedings

In light of the foregoing rulings, Nelnet is the only Defendant remaining in this case. Nelnet has previously advised the Court that it intends to file a motion for judgment on the pleadings pursuant to Rule 12(c). The Court will order Nelnet to file any such motion within 30 days of the date of this Order. While the Court has denied Gavin's motion for leave to amend, the Court reminds Nelnet that, "because Plaintiff proceeds in this matter *pro se*, the Court must consider not only the facts alleged in Plaintiff's Complaint, but also the facts alleged in the various other documents Plaintiff has filed thus far in this case." *Washington v. AlliedBarton Sec. Servs., LLC*, 289 F. Supp. 3d 137, 139 (D.D.C. 2018) (citing *Brown v. Whole Foods Mkt.*

*Grp. Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015)). Thus, Nelnet's motion for judgment on the pleadings should look beyond Gavin's complaint and consider relevant factual allegations in other documents Gavin has filed as well, including any relevant facts alleged in her motion to stay her change in disability status and her proposed amended complaint.

**V.     Conclusion and Order**

For all of the above reasons, Gavin's claims against ISAC are hereby **DISMISSED**, and her Motion for Leave to Amend (No. 62), Motion to Stay (ECF No. 55), and Motion for Summary Judgment (ECF No. 54) are **DENIED**. Nelnet shall file its motion for judgment on the pleadings by June 14, 2018.

**SO ORDERED.**

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: May 15, 2018